*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JACKIE HUMPHRESS,

> *Petitioner-Appellant,*

> No. 03-5951

*v.*

UNITED STATES OF AMERICA,

> *Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00943—Todd J. Campbell, District Judge.

Argued: September 23, 2004

Decided and Filed: February 25, 2005

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** William S. Walton, MILLER & MARTIN, Nashville, Tennessee, for Appellant. Hilliard H. Hester, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** William S. Walton, MILLER & MARTIN, Nashville, Tennessee, for Appellant. Hilliard H. Hester, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

ALICE M. BATCHELDER, Circuit Judge. Petitioner Jackie Humphress appeals the district court's denial of his motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or amend his sentence, imposed after a jury convicted him on charges of conspiracy to murder an officer or employee of the United States on account of performance of official duties, in violation of 18 U.S.C. § 1117, and attempted murder of an officer or employee of the United States on account of performance of official duties, in violation of 18 U.S.C. §§ 1114 and 2. Humphress argues that the district court erred in concluding that he was not denied the effective assistance of counsel during plea negotiations. In a supplemental brief, Humphress argues that his sentence was increased on the basis of facts found by the sentencing court, in violation of *Blakely v. Washington,* 124 S. Ct. 2531 (2004). Because the Supreme Court's intervening decision in *United States v. Booker*, 125 S. Ct. 738 (2005), which now governs Humphress's *Blakely* claim, does not apply retroactively to cases already final on direct review and because there is no reasonable probability that, but for his

counsel's allegedly deficient performance, Humphress would have pled guilty, we will **AFFIRM** the district court's denial of the § 2255 motion.

## I.

Humphress's underlying conviction is based on an agreement to murder an FBI agent, which he entered into with his co-defendant, Ronald Dick. While serving a prison sentence on a drug conviction, Dick told his cellmate that he wished to have several federal officials, including an FBI agent, murdered. Unbeknownst to Dick, his cellmate informed the FBI and began assisting FBI agents in an investigation which eventually led to Humphress's indictment on charges of conspiracy to commit murder, attempted murder, aiding and abetting murder, soliciting a crime of violence, and utilizing a firearm in relation to a crime of violence.

Humphress retained Charles Ray, an experienced criminal defense attorney, to represent him. During December of 1996, Hilliard Hester, the Assistant United States Attorney assigned to Humphress's case, discussed with Ray the possibility of a plea agreement in which Humphress would plead guilty to the charge of using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) and another substantive count in exchange for the Government's recommendation of a ten-year prison sentence. Hester testified that this agreement was never reduced to writing, and Ray was unable to produce any record of the negotiations. Ray discussed the terms of the agreement with Humphress and recommended that he decline the offer. The parties dispute the extent to which Ray counseled Humphress on the sentencing guidelines and whether Ray warned Humphress of the risks associated with going to trial, but in any event, Ray sent the United States Attorney's office a letter advising that Humphress was unwilling to accept the plea agreement.

Despite overwhelming evidence to the contrary, Humphress testified at trial that he had not willingly conspired with Dick to murder the FBI agent. He claimed that he had participated in the murder plot only because two or three unknown men had threatened his family. The jury rejected Humphress's duress defense and convicted him on the conspiracy, attempt, and aiding and abetting counts. Humphress was acquitted of soliciting a crime of violence and utilizing a firearm in relation to a crime of violence. In calculating Humphress's sentence, the district court increased the base offense level from 28 to 37 based on factual findings, at least some of which had not been found by the jury. The court then sentenced Humphress to 210 months' imprisonment, the minimum sentence allowed under the guidelines.

After his sentence was affirmed by this court on direct appeal, *see United States v. Dick & Humphress*, 194 F.3d 1314 (Table), 1999 WL 825037 (6th Cir. 1999), Humphress filed this motion under 28 U.S.C. § 2255 attacking his convictions and resulting sentence on numerous grounds. A magistrate judge issued a report and recommendation concluding that all of Humphress's claims, save the claim of ineffective assistance of counsel, should be denied. The district court adopted and approved the magistrate judge's report and recommendation. After conducting an evidentiary hearing on the ineffective assistance of counsel claim, the magistrate judge concluded that Ray's failure to advise and inform his client on the plea agreement constituted ineffective assistance of counsel, but that because Humphress had not shown that there was a reasonable probability that he would have pled guilty but for the alleged errors of his trial attorney, Humphress had failed to demonstrate prejudice resulting from counsel's ineffective assistance. The magistrate judge therefore recommended that the claim should be denied and the motion dismissed.

The district court agreed that Humphress had failed to demonstrate prejudice, but also concluded that Humphress had failed to prove that his trial counsel was ineffective. Humphress timely appealed, and we issued a Certificate of Appealability on the issue of "whether trial counsel rendered ineffective assistance by failing to adequately advise Humphress about a plea offer."

## II.

In reviewing the denial of a motion to vacate, alter, or amend a sentence pursuant to 28 U.S.C. § 2255, we review the district court's factual findings for clear error and its legal conclusions de novo. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). "To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

Humphress argues that the district court's denial of habeas relief was erroneous because he did not receive effective assistance of counsel during plea negotiations. Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill*, 474 U.S. at 58. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Even assuming that Ray's performance was constitutionally deficient, *see Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"), Humphress's petition must fail because he has not established a reasonable probability that he would have pled guilty if properly advised by counsel.

During the evidentiary hearing, Humphress's appellate counsel asked him "do you believe that [counseling on the Sentencing Guidelines] would have influenced your decision at all whether to proceed to trial if you had some kind of knowledge about how the sentencing guidelines might affect your case if you were found guilty?" Humphress answered "it's hard to say what – speculate on what I would have done, but it's – if I would have knew then the facts that I know now, I would have had a lot better chance to make a more intelligent decision in what we could do."

On cross-examination, counsel for the government asked Humphress "[a]re you telling the judge that if you had it to do all over again today that you'd plead guilty instead of going to trial?" Humphress answered "[i]t's hard to say what I would do today. I mean, there's no – it's not a black and white issue." The government's counsel persisted, asking "are you telling us that you would have insisted on pleading guilty, that's what you wish you had done and that's what you would do if you had the chance to do it all over again?" Humphress responded equivocally: "[t]o a certain extent, yes, sir." Humphress's evasive answers preclude a finding that there is a reasonable probability that he would have chosen to plead guilty.

Humphress's assertions of his innocence at trial and during the magistrate's evidentiary hearing lend additional support to the district court's conclusion that Humphress would not have pled guilty. During the evidentiary hearing, Humphress repeatedly asserted that he never willingly entered into an agreement to murder a federal official. Even assuming that Humphress would have accepted an *Alford*-like guilty plea, *North Carolina v. Alford*, 400 U.S. 25 (1970), it is highly unlikely that the United States would have offered one in light of the overwhelming evidence of his guilt. *See* Stephanos Bibas, *Harmonizing Substantive- Criminal- Law Values and Criminal Procedure: the Case of Alford and Nolo Contendere Pleas*, 88 CORNELL L. REV. 1361, 1380 (2003)

(citing The United States Department of Justice Principles of Federal Prosecution as evidence that the Department discourages *Alford* pleas). Furthermore, there is no evidence in the record which suggests that the district court would have accepted an *Alford* plea.

Accordingly, we find that Humphress did not demonstrate a reasonable probability that he would have pled guilty but for his trial counsel's allegedly ineffective performance, and we affirm the conclusion of the district court that Humphress failed to demonstrate prejudice as a result of his trial counsel's errors.

### III.

Humphress argues that his sentence was imposed in violation of *Blakely,* 124 S. Ct. 2531, because the trial judge increased his sentence based on findings of fact made by the judge. This claim is now governed by the Supreme Court's intervening decision in *Booker*, 125 S. Ct. 738, which applied the *Blakely* reasoning to the Federal Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. Because we conclude that *Booker*'s rule does not apply retroactively in collateral proceedings, we find this claim meritless.

Generally speaking, federal habeas corpus petitioners may not rely on new rules of criminal procedure[1] handed down after their convictions have become final on direct appeal. *Schriro v. Summerlin*, 124 S. Ct. 2519, 2523 (2004). In *Teague v. Lane*, 489 U.S. 288 (1989), however, the Supreme Court announced a three-step analysis to determine whether a new rule of criminal procedure applies to a case on collateral review. The reviewing court must first determine when the defendant's conviction became final. *Beard v. Banks*, 124 S. Ct. 2504, 2510 (2004). Next, the court must decide whether the rule in question is actually "new." *Id.* If it is, the court must determine whether the new rule falls into either of two exceptions to nonretroactivity. *Id.*

Determining the date on which Humphress's conviction became final is not a difficult task. The conviction of a federal criminal defendant who takes a direct appeal to the court of appeals becomes final for the purposes of 28 U.S.C. § 2255 "upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). Because he did not file a petition for certiorari, Humphress's conviction became final in January of 2000, 90 days after we denied his direct appeal. *See United States v. Dick & Humphress*, 194 F.3d 1314 (Table), 1999 WL 825037 (6th Cir. 1999).

Next, we must decide whether *Booker*'s rule constitutes a "new rule" of criminal procedure. *See Beard*, 124 S. Ct. at 2510. The Supreme Court has stated that a new rule is a rule that "breaks new ground." *Teague*, 489 U.S. at 301. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* As the Court put it in *Beard*,

> We must therefore assay the legal landscape as of [January 2000] and ask "whether the rule later announced in [*Booker*] was *dictated* by then-existing precedent – whether, that is, the unlawfulness of [respondent's] conviction was apparent to all reasonable jurists."

---

[1] Without question, this rule is a procedural one. *See Schriro v. Summerlin*, 124 S.Ct. 2519, 2524 (2004) (distinguishing between new substantive rules and new procedural rules, and noting that a rule requiring that a jury rather than a judge find the facts essential to the death penalty is a procedural rule, whereas a rule that a particular fact is essential to the death penalty is a substantive rule).

*Beard*, 124 S. Ct. at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)).

The *Booker* rule is clearly new. It was not dictated by precedent existing at the time that Humphress's conviction became final, and it would not have been apparent to "all reasonable jurists" that his conviction was unlawful. Indeed, the *Booker* Court explicitly held that the holding applies to all cases on direct review, quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987): "'[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.'" *Booker*, 125 S. Ct. at 769. This discussion would be wholly unnecessary had the rule been dictated by precedent. *See McReynolds v. United States*, ___F.3d___, 2005 WL 237642, at *2 (7th Cir. Feb 2, 2005) ("*Blakely* reserved decision about the status of the Federal Sentencing Guidelines . . . , so *Booker* itself represents the establishment of a new rule . . . .")

That the federal judiciary has been deeply divided on the issue of whether the rule announced in *Blakely* applies to the Federal Guidelines lends further support to the conclusion that *Booker* announced a new rule.[2] As we have noted above, a rule of criminal procedure does not break new ground if "the unlawfulness of [the petitioner's] conviction was apparent to all reasonable jurists." *Beard*, 124 S. Ct. at 2511; *see also O'Dell v. Netherland*, 521 U.S. 151, 164 (1997) (analyzing whether a reasonable jurist "would [] have felt *compelled* to adopt the rule"). First, *Booker* was decided over a four-justice dissent. *Booker*, 125 S. Ct. at 807 (Breyer, J., dissenting) (opining that factual distinctions "offer a principled basis" for refusing to extend *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to the Federal Guidelines). Further, the differing interpretations of *Blakely* announced by the United States Courts of Appeals also indicate that not all reasonable jurists believed that the *Booker* rule was compelled by *Blakely*. In *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), this Circuit joined the Second, Fourth, and Fifth Circuits in holding that *Blakely* did not compel the conclusion that the Federal Sentencing Guidelines violate the Sixth Amendment. *See United States v. Mincey*, 380 F.3d 102 (2d Cir. 2004); *United States v. Hammoud*, 378 F.3d 426 (4th Cir. 2004) (en banc); *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004). The Eleventh Circuit endorsed *Koch'*s holding. *See United States v. Reese*, 382 F.3d 1308, 1310 (11th Cir. 2004). Even those Circuits that have applied *Blakely*'s rule to the Federal Guidelines have done so over dissents. *See United States v. Booker*, 375 F.3d 508, 515 (7th Cir. 2004) (Easterbrook, J., dissenting); *United States v. Ameline*, 376 F.3d 967, 984 (9th Cir. 2004) (Gould, J., dissenting). These authorities are all premised on the idea that, given the proper circumstances, a judge may make sentence-enhancing findings of fact pursuant to the Federal Guidelines and not run afoul of the Sixth Amendment.[3] We are mindful of the observation in *Beard* that "[b]ecause the focus of the inquiry is whether *reasonable* jurists could differ as to whether precedent compels the sought-for rule, we do not suggest that the mere existence of a dissent suffices to show that the rule is new." *Beard*, 124 S. Ct. at 2513 n.5. We are confident, however, not only that the jurists who authored these majority opinions and dissents are reasonable, but that these opinions and dissents make it manifest that the rule of *Booker* is new.

---

[2] In *Blakely,* which was itself a 5-4 decision, the Court analyzed a sentence imposed pursuant to the State of Washington's sentencing scheme, which is similar to the Federal Sentencing Guidelines. The Court held that the application of Washington's sentencing scheme violated the defendant's Sixth Amendment rights because it permitted an increase of the defendant's sentence on the basis of facts found by the judge and not by the jury. *Blakely*, 124 S. Ct. at 2537-38. Although Justice O'Connor observed that "Washington's scheme is almost identical to the upward departure regime established by 18 U.S.C. § 3553(b) and implemented in USSG § 5K2.0," *Blakely*, 124 S. Ct. at 2549 (O'Connor, J., dissenting), it was by no means a foregone conclusion that the rule in *Blakely* rendered the Federal Guidelines unconstitutional, as Justice Breyer's dissent in *Booker* proves. *Booker*, 125 S. Ct. at 802-03 (Breyer, J., dissenting).

[3] Considering its statement that "[t]he Federal Guidelines are not before us, and we express no opinion on them," it comes as no surprise that many jurists did not read *Blakely* as invalidating the Federal Sentencing Guidelines. *Blakely*,124 S. Ct. at 2538 n.9.

Finally, we must decide whether *Booker*'s new rule falls into either of *Teague*'s two exceptions to the nonretroactivity rule. First, the nonretroactivity rule "does not apply to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Beard,* 124 S. Ct. at 2513 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). Because this exception is clearly inapplicable, we proceed directly to our analysis of *Teague*'s second exception.

*Beard* succinctly explained the second *Teague* exception:

> The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. We have repeatedly emphasized the limited scope of the second *Teague* exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Beard*, 124 S. Ct. at 2513-14 (internal quotations and citations omitted). The Court went on to state that *Gideon v. Wainwright*, 372 U.S. 335 (1963), which established an affirmative right to counsel in felony cases, *might* constitute a watershed rule that would satisfy *Teague*'s second exception. *Id.* at 2514. Examples of rules that do not fall within *Teague*'s second exception include the following: *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (holding that the Eighth Amendment bars imposition of the death penalty by a jury that had been led to believe that they would not be responsible for the imposition of the death penalty), *see Sawyer v. Smith*, 497 U.S. 227, 242 (1990); *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that a member of a cognizable racial group may establish a prima facie case of racial discrimination under the Fourteenth Amendment by showing that a prosecutor exercised peremptory challenges to remove jurors because of their race), *see Teague*, 489 U.S. at 314-15; and *Simmons v. South Carolina,* 512 U.S. 154, 156 (1994) (requiring that a capital defendant be permitted to inform his sentencing jury that he is ineligible for parole if the state argues that he presents a "future danger"), *see O'Dell,* 521 U.S. at 153.

The Supreme Court's decision in *Schriro* is highly instructive as to whether *Booker*'s is a watershed procedural rule. 124 S. Ct. 2519. *Schriro* held that *Ring v. Arizona*, 536 U.S. 584 (2002) (holding that provisions of Arizona's sentencing scheme that allowed a judge to find those aggravating factors authorizing the death penalty violate the Sixth Amendment) did not announce a "watershed rule[] of criminal procedure" that would apply retroactively to cases already final on direct review. *Schriro*, 124 S. Ct. at 2524-26. The Court framed the issue as "whether judicial factfinding so *seriously* diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Id*. at 2525 (internal citations and quotations omitted). Citing *DeStefano v. Woods*, 392 U.S. 631, 633-34 (1968) (holding that procedural rule applying the Sixth Amendment's jury-trial guarantee to the states has no retroactive effect), the *Schriro* Court observed that "[i]f . . . a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." 124 S. Ct. at 2526.

*Schriro*'s reasoning applies with equal force to *Booker*.[4] Both *Ring* and *Booker* found unconstitutional particular aspects of sentencing schemes allowing a judge to impose punishment

---

[4] If the *Schriro* Court was unwilling to consider Arizona's death penalty sentencing scheme under a less stringent reading of the second *Teague* exception than it had theretofore required, *see Schriro*, 124 S. Ct. at 2526 (rejecting the dissent's "death is different" approach), surely the Court would not review the sentencing scheme of the Federal Sentencing Guidelines under a less stringent reading of that *Teague* exception.

on the basis of judge-found facts. We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard*, 124 S. Ct. at 2513-14. We hold that *Booker*'s rule does not either. *Accord McReynolds*, 2005 WL 237642 at *2.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing Humphress's 28 U.S.C. § 2255 motion to vacate, set aside or amend his sentence.