UNITED STATES of America,
Plaintiff,

v.

Gregory Steven HORN, Defendant.

Case No. 3:01–cr–00142.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 16, 2008.

Harold Benton McDonough, Jr., Office of the United States Attorney, Nashville, TN, for Plaintiff.

## ORDER

THOMAS A. WISEMAN, JR., Senior District Judge.

Before the Court is defendant Gregory Steven Horn's *pro se* Motion for Modification of Sentence (Doc. No. 42) and Supplemental Motion for Resentencing (Doc. No. 51), in which Horn seeks a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 709 to the United States Sentencing Guidelines ("U.S.S.G.").[1]

The issue now having been briefed and argued exhaustively, the Court, for the reasons set forth below, hereby **GRANTS** the Motion and the Amended Motion. Resentencing in this case is set for Wednesday, January 7, 2009, at 10:00 a.m.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In September 2001 Mr. Horn was arrested in Nashville for the crime of armed bank robbery and later charged with a one-count Information filed in the Middle District of Tennessee. He pleaded guilty to the Information in November 2001 was sentenced by this Court in May 2002 to a term of 204 months, or seventeen years. Among the factors taken into consideration during sentencing was the fact that Horn had committed two prior bank robberies in Maryland in January 1998. There was no intervening arrest between the two Maryland bank robberies; Horn was arrested and charged for both on the same day, and was later convicted and sentenced for both as part of the same proceeding. He received a suspended sentence for one of the two prior convictions, so he effectively served just a single sentence before appearing in this Court.

At the time of Horn's sentencing in this Court, 28 U.S.C. § 994(h) directed the Sentencing Commission to ensure relatively long sentences for offenders receiving a third conviction for a serious drug offense or crime of violence. Pursuant to this directive, the Commission had established its career-offender guideline, which triggered long sentences when an offender had at least two prior qualifying convictions. *See* U.S.S.G. § 4B1.1 (2001) (defining "career offender" as a defendant who was at least eighteen years old at the time of committing the instant offense of conviction; the instant offense is a felony involving either a crime of violence or a controlled substance; and the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense"). The Guidelines, both in 2001 and currently, define the term "two prior felony convictions" to mean that the defendant, prior to the commission of the instance offense, had sustained at least two felony convictions of either a crime of violence or a controlled substance offense (or one of each) *and* "the sentences for at least two of the aforementioned felony convictions were counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2(c) (2001).

---

1. *See* U.S.S.G. Supplement to Appendix C, at 235–41 (amendments to the Guidelines Manual effective November 1, 2004, through November 1, 2007) ("Amendment 709").

The referenced subsections of § 4A1.1 do not actually define or identify when or whether prior felony convictions are to be considered separately; they pertain to the calculation of a defendant's "criminal history category" based on the defendant's "prior sentence[s] of imprisonment." U.S.S.G. § 4A1.1(a)-(c). However, the term "prior sentence" as used in § 4A1.1 is defined to mean "any sentence previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (2001). Further, up until the adoption of Amendment 709, made effective as of November 1, 2007, "[p]rior sentences imposed in related cases [were] to be treated as one sentence" for purposes of calculating a criminal history category under § 4A1.1. U.S.S.G. § 4A1.2(a)(2) (2001) (amended 2007). The Application Notes in effect before the adoption of Amendment 709 explained that prior sentences were not "related" and therefore should be counted separately if they were "for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the-second offense)." U.S.S.G. § 4A1.2 cmt. n.3 (2001) (amended 2007). "Otherwise, prior sentences [we]re considered related if they resulted from offenses that (A) occurred on the same occasion, (b) were part of a single or common scheme or plan, or (C) were consolidated for trial or sentencing." *Id.*

In the Sixth Circuit, the terms "same occasion" and "common scheme" employed in the Commentary to § 4A1.2 had, even by the time Horn was sentenced in this Court, been construed so narrowly as to drive exceptions based upon them virtually into extinction. *See, e.g., United States v. Martin*, 438 F.3d 621, 640 (6th Cir.2006) (Martin, J., concurring) ("We have reached the point, I believe, that only truly simultaneous crimes—which rarely, if at all, exist—or those crimes with explicit evidence that they were planned together, will render offenses 'related.' "). In addition, the term "consolidated" under the Guidelines in effect at the time of Horn's sentencing had sparked significant confusion and inconsistency, with some circuits interpreting the term "consolidated" as requiring a formal order of consolidation, regardless of whether the crimes were actually tried in the same suit or sentenced in one proceeding,[2] while others did not.[3] The Sixth Circuit, like most other appellate courts, had held that, in the absence of a formal consolidation order, defendants must show something more than just a single sentencing hearing or a concurrent sentence to establish that sentences were "related," even where a formal consolidation order was not necessarily required. *See, e.g., Martin*, 438 F.3d at 627, 638 (noting the trial court had rejected the defendant's "related offenses" argument in part on the basis that the state courts had not entered an order consolidating the convictions, but also because the defendant had presented no evidence establishing that the four car

**2.** *See United States v. Correa*, 114 F.3d 314 (1st Cir.1997) (holding that charges based on "offenses which occurred on different dates and which did not arise out of the same course of conduct ... should not be regarded as having been consolidated (and, therefore, 'related') unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one

another beyond the sheer fortuity that sentence was imposed by the same judge at the same time.").

**3.** *See, e.g., United States v. Huskey*, 137 F.3d 283, 288 (5th Cir.1998) (holding that cases were *de facto* consolidated, despite absence of a formal consolidation order, where they appeared in the same criminal information under the same docket number, such that the sentences for those convictions arose from "related cases").

thefts for which the defendant had previously been convicted "were anything other than a crime spree that ended when he was arrested for his role in the thefts"); *United States v. Odom,* 199 F.3d 321, 323–24 (6th Cir.1999) (prior convictions are not considered related merely because concurrent sentences were imposed).[4]

This Court, applying the then-mandatory Sentencing Guidelines and the applicable Sixth Circuit case law construing the "related cases" definition very narrowly, classified Horn as a career offender based on his prior bank robbery convictions. The effect of this classification was basically to double Horn's sentencing range under the Guidelines. On appeal, Horn's classification as a career offender as well as his sentence and conviction were upheld. *United States v. Horn,* 355 F.3d 610 (6th Cir.2004).

Five years later, the Sentencing Commission propounded Amendment 709 for the express purpose of addressing the inconsistency and confusion that had been generated by the "related cases" doctrine. The Amendment basically provided that all cases sentenced on a single day were "related" for criminal-history purposes, unless the underlying offenses were separated by an intervening arrest. More specifically,

the Amendment struck the then-existing version of § 4A1.2(a)(2) in its entirety and substituted the following:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. . . .

*See* U.S.S.G. app. C, supp. (2007).

There is no dispute that if this version of § 4A1.2(a)(2) had been in effect at the time of Horn's initial sentencing, Horn's prior sentences for the Maryland bank robberies, imposed on the same day, would have counted as one sentence rather than two and that, consequently, Horn would not have qualified as a career offender. His sentencing range under the Guidelines

---

4. *Cf. United States v. Brothers,* 316 F.3d 120 (2d Cir.2003) (affirming district court's determination that prior crimes could not be considered "consolidated for . . . sentencing" and thus "related" for criminal history purposes unless the two cases were closely factually related, regardless of whether the defendant was sentenced for the two separate prior crimes by the same judge at a single sentence to a concurrent sentence for both crimes); *United States v. Rivers,* 929 F.2d 136 (4th Cir.1991) (reversing as "clearly erroneous" the district court's finding that two prior armed robbery convictions should be counted as one prior sentence for purposes of computing criminal history category in part because there was no formal consolidation); *United States v. Metcalf,* 898 F.2d 43 (5th Cir.1990) (holding that the sentencing on two distinct cases held on the same day by the same judge who imposed identical concurrent sentences did not necessitate a finding that the offenses for which the sentence was imposed were consolidated for criminal history purposes where the offenses occurred on different dates, had separate docket numbers and had not been the subject of an order of consolidation); *United States v. Joseph,* 50 F.3d 401, 404 (7th Cir.1995) (holding that the pertinent issue was whether the cases were "functionally" consolidated even if not formally consolidated, that is, whether the sentencing court considered the cases sufficiently related for consolidation and effectively entered one sentence for multiple convictions)

would have been reduced by more than half.

On the strength of this Amendment, Horn has filed his motion for resentencing. The Government opposes the motion.

## II. CONCLUSIONS OF LAW

Horn filed his original motion for resentencing (Doc. No. 42) under 18 U.S.C. § 3582, which allows a district court to resentence an offender whose sentencing range has been lowered by a Guideline amendment if the reduction in sentence is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Implicitly recognizing that the policy statement pertaining to retroactivity did not list Amendment 709, as discussed below, Horn also argued that district courts have authority to give retroactive effect to clarifying, as opposed to substantive, amendments regardless of whether they are listed under U.S.S.G. § 1B1.10(c). Horn further suggested several alternative routes to relief in the event the Court found that § 3582 does not authorize a reduction in sentence in his case, including that his petition be forwarded to the Sixth Circuit for authorization to file a successive § 2255 petition in this Court or a reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure of the denial of Horn's prior § 2255 motion. Finally, Horn argued that the unique facts of his case constitute "extraordinary circumstances" compelling a grant of relief in the interest of fundamental fairness.

Horn's motion was filed *pro se*. After counsel was appointed to represent him for purposes of the motion, counsel filed a Supplemental Motion on his behalf (Doc. No. 51) arguing, in essence, that the text and context of § 3582(c)(2), construed in light of the Supreme Court's decisions in *Booker* and its progeny establish that this Court has authority to modify Horn's sentence despite the Sentencing Commission's failure to specifically designate Amendment 709 for retroactive application, particularly because the Sentencing Commission relied on an unsound rationale for declining to designate Amendment 709 for retroactive application.

In response, the Government continues to maintain that this Court does not have jurisdiction to reduce Horn's sentence under 18 U.S.C. § 3582(c)(2) because Amendment 709 is not listed in U.S.S.G. § 1B.10(c) for retroactive application and that Amendment 709 is not a clarifying amendment. (Doc. Nos. 44 and 53.)

A number of courts have agreed with the Government's analysis and have held categorically that they are not authorized to apply Amendment 709 retroactively, even in this post-*Booker* era. *See, e.g., United States v. Peters*, 524 F.3d 905, 906 (8th Cir.2008) (affirming district court's denial of the defendant's motion for a reduction in sentence in part because Amendment 709 "is not a covered amendment under § 1B1.10 to which retroactive treatment may be given"); *United States v. Contreras*, No. 08–10325, —— Fed.Appx. ——, ——, 2008 WL 5068621, at *1 (5th Cir. Dec. 1, 2008) (summarily affirming the district court's denial of defendant's motion to reduce his sentence pursuant to Amendment 709 and 18 U.S.C. § 3582(c)(2), on the basis that "Amendment 709 is not listed as an amendment covered by the policy statement in § 1B1.10(c)" and, "[t]herefore, under the plain language of § 3582(c), the district court correctly denied Contreras's motion"); *United States v. Favela–Corral*, No. 4:02CR3121, 2008 WL 2705600, at *1 n. 4 (D.Neb. July 10, 2008) ("Since the Sentencing Commission did not make Amendment 709 retroactive, it would be inconsistent with the "applicable policy statements issued by the Sentencing Com-

mission," and therefore inconsistent with the plain words of 18 U.S.C. § 3582(c)(2), to grant the defendant relief."); *Cantu v. United States*, No. 1:07–CV–535, 2008 WL 2115207, at *2 (W.D.Mich. May 19, 2008) (denying request for resentencing under § 3582(c)(2) on the grounds that Amendment 709 was not made retroactive). *Cf. United States v. Wise*, 515 F.3d 207, 221 and n. 11 (3d Cir.2008) (noting that defendants sentenced for crack cocaine offenses prior to November 1, 2007 had to wait until Amendment 706 was actually listed as retroactive in U.S.S.G. § 1B1.10(c) before seeking relief under § 3582(c)(2), stating: "Some may argue that, because the Guidelines are no longer mandatory, defendants need not wait to apply for relief under § 3582(c)(2). That fundamentally misunderstands the limits of *Booker*. Nothing in that decision purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines. As we have stated before, '[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2).'" (quoting *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir.1995)).).

Despite the number of courts reaching the opposite conclusion, this Court finds that it has the authority and discretion under § 3582(c)(2) to grant Horn's motion even though Amendment 709 is not listed in U.S.S.G. § 1B1.10, and that the holdings in *Booker* and other recent Supreme Court jurisprudence require the Court to exercise that discretion under the circumstances presented here. Because the Court will grant the defendant's motion on

that basis, it will not reach his other arguments.

**A. Section 3582(c)(2) authorizes this Court to exercise its discretion to determine when a Guideline amendment justifies resentencing, upon taking into consideration the applicable Sentencing Guidelines policy statements.**

■ Congress enacted the Sentencing Reform Act of 1984 ("SRA") as Title II of the Comprehensive Crime Control Act of 1984. The SRA specifically empowers district courts later to reduce an offender's final sentence under two types of changed circumstances. 18 U.S.C. § 3582(c).[5] The relevant provisions of this statute state:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment ..., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction; ... and that such a reduction is *consistent with applicable policy statements issued by the Sentencing Commission;* and ...

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o* ), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment,

---

**5.** In 1994 Congress added a third circumstance not relevant here. 18 U.S.C.

§ 3582(c)(1)(A)(ii).

after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is *consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1) and (2) (emphasis added). Thus, Congress clearly conditioned the authority to reduce an already final sentence in both the above circumstances upon the same factor: that the reduction be consistent with applicable policy statements of the Sentencing Commission.

As the defendant here points out, that language does not serve to subject the courts' discretion entirely to the Commission's dictate; it does not, for example, state that a court may reduce a sentence only if "authorized" to do so by the Commission. That the courts retain some discretion in the decision whether to reduce a sentence is corroborated by the statute's legislative history, as set forth in the Senate Judiciary Committee's Report on the SRA,[6] which indicates that the Commission's policy statements are intended to guide courts' exercise of their sound judgment and discretion:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the [defendant] was convicted have been later amended to

provide a shorter term of imprisonment.... The bill, as reported, provides ... in 18 U.S.C. § 3583(c) for court determination, subject to *consideration* of Sentencing Commission *standards,* of the question *whether there is justification* for reducing the term of imprisonment in situations such as those described.

S.Rep. No. 225, 98th Cong., 1st Sess. 37–150, at 55–56, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3220–3373 (emphasis added). In the same Report, in a section entitled "Assuring Fairness in Sentencing," the Committee explained that the primary goal of sentencing reform was "the elimination of unwarranted sentencing disparity," but stated it did not intend the Guidelines to "be imposed in a mechanistic fashion." *Id.* at 52, U.S.Code Cong. & Admin.News 1984 p. 3235. In other words, Congress clearly communicated its intent that a district court, in deciding whether to reduce a sentence, should look at the individual case and decide whether a reduction was "justifi[ed]" given the surrounding circumstances and the Sentencing Commission's "standards." *Id.* at 56, U.S.Code Cong. & Admin.News 1984 p. 3239.

■ Further, a well established principle of statutory interpretation presumes that "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (citations omitted). Specifically with respect § 3582(c)(1), Congress has expressed its intent that the policy statements referenced therein

---

**6.** This Senate Report is considered the authoritative source for the SRA's legislative history. *See* Mary Price, "The Other Safety Valve," 13 Fed. Sent. R. 188, n.4 (2000–01) ("The most important legislative history for the ACT [SRA] is found in the report of the Senate Judiciary Committee on the Compre-

hensive Crime Control Act of 1983 [S.Rep. No. 225, 98th Cong., 1st Sess. 37–150, U.S.Code Cong. & Admin.News 1984, 3182]." (quoting Criminal Div., U.S. Dep't of Justice, Prosecutors Handbook on Sentencing Guidelines and Other Provisions of the Sentencing Reform Act of 1984, at 83 (Nov. 1, 1987)).

should serve as standards and guidelines rather than mandates:

> The Commission, in *promulgating general policy statements* regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t) (emphasis added). Because the identical phrase is used in § 3582(c)(2), the policy statements referenced therein should likewise be considered as guides that "should be considered" rather than mandates that *must* be followed. *Cf. C.I.R. v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993) ("[T]he Code must be given as great an internal symmetry and consistency as its words permit." (internal quotation marks and citation omitted)).

Despite Congress's apparent intent that the Commission's policy statements serve as guidelines rather than mandates, the attendant policy statement issued by the Sentencing Commission essentially proclaims that its authority is mandatory rather than discretionary:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. 3582(c)(2). As required by 18 U.S.C. 3582(c)(2), any such reduction in the defendant's term of imprisonment *shall be consistent* with this policy statement.

U.S.S.G. § 1B1.10(a)(1) (emphasis added). It further purports to dictate that a reduction in a sentence is inconsistent with the policy statement and therefore not authorized by § 3582(c)(2) unless the guideline amendment pursuant to which a petitioner seeks a reduction in sentence is listed under U.S.S.G. § 1B1.10(c):

> A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if—
>
> (A) None of the amendments listed in subsection (c) is applicable to the defendant.

*Id.* § 1B1.10(a)(2)(A). In other words, through this "statement," the Commission has unilaterally declared that no offender already sentenced is permitted to obtain relief under an amended guideline if the Commission declines to list that amendment in § 1B1.10(c). Given these considerations, the Court finds U.S.S.G. § 1B1.10 to be at odds with 18 U.S.C. § 3582(c)(2) insofar as the statute was intended to authorize courts to exercise a certain amount of discretion in determining whether a reduction in sentence pursuant to a Guideline amendment is warranted.

**B** ***Booker* and its progeny require that the District Courts retain discretion as to whether to reduce a sentence based on Amendment 709.**

█ Moreover, regardless of whether Congress originally intended courts' compliance with the policy statement set forth in U.S.S.G. § 1B1.10 to be mandatory rather than discretionary, it is now clear in light of the Supreme Court's recent jurisprudence that the Sentencing Guidelines as a whole are advisory rather than mandatory. *United States v. Booker*, 543 U.S. 220, 260–61, 125 S.Ct. 738, 160 L.Ed.2d 621

(2005). *See also Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) (district courts must treat the Guidelines as the "starting point and the initial benchmark," but the Guidelines "are not the only consideration"). Moreover, the Guidelines are advisory in *all* contexts in which a sentencing decision is made, not simply in the initial sentencing. *See Booker,* 543 U.S. at 266, 125 S.Ct. 738 ("[W]e believe that Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others[.]")

■ By purporting to dictate which amendments may be applied retroactively through § 3582(c)(2), section 1B1.10 of the Guidelines attempts to create a mandatory scheme under which district courts lack any discretion. Insofar as either § 1B1.10 does so, it is unconstitutional. Likewise, to construe 18 U.S.C. § 3582(c)(2) as giving the Sentencing Commission the authority to establish such a mandatory scheme through its policy statements would render it unconstitutional in that respect. *Cf. Booker,* 543 U.S. at 233–34, 243–45, 125 S.Ct. 738 (finding unconstitutional the provision of the federal sentencing statute that makes the Sentencing Guidelines mandatory). Because statutes are to be construed as consistent with the Constitution if possible, *Clark v. Martinez,* 543 U.S. 371, 380, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005), this Court does not interpret § 3582(c)(2) to make application of the policy statement set forth in U.S.S.G. § 1B1.10 mandatory.

■ The district courts' sentencing discretion includes the power to depart from the Guidelines to the extent that they are found to rest upon "unsound judgment," *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007),

or do not exemplify the Commission's exercise of its "characteristic institutional role," *Kimbrough v. United States,* —— U.S. ——, 128 S.Ct. 558, 574, 575, 169 L.Ed.2d 481 (2007), that is, to issue guidelines that are "the product of careful study based on extensive empirical evidence," *Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). *Cf. United States v. Grinbergs,* No. 8:05CR232, 2008 WL 4191145, at *10 (D.Neb. Sept. 8, 2008) (finding that the Guidelines at issue in that case did not "reflect the Sentencing Commission's unique institutional strengths" and therefore affording them less deference than it would have to "empirically grounded guidelines"). Moreover, the Supreme Court has expressly recognized that courts may depart from the Guidelines "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough,* 128 S.Ct. at 570. If they do so, however, they must provide the basis for their disagreement. *Gall,* 128 S.Ct. at 594.

## C. The Policy Statement of the Commission excluding Amendment 709 from retroactive application rests upon unsound judgment

The stated purpose of Amendment 709 was to simplify the related-cases doctrine and to enhance consistency in the punishment of recidivists. U.S.S.G. app. C, supp., Amend. 709, "Reason for Amendment." After enacting Amendment 709, the Commission took public comment as to whether it should designate the Amendment for purely prospective application or for retroactive application as well. All of the public commentary recommended retroactive application through the procedure established by 18 U.S.C. § 3583(c)(2) established for remedial sentencing,[7] *except*

---

**7.** *See* U.S. Sentencing Commission, Public Comment on Letters of Retroactivity of Amendments 9 and 12, available at http://www.ussc.gov/pubcom_Retro/PC200711.htm.

for an objection by the United States Department of Justice—in the same letter in which it opposed making retroactive the "Crack Cocaine Amendment" (Amendment 706, reducing sentences for crack cocaine offenses). (*See* Doc. No. 51–1.)

Despite the overwhelming support for retroactive application, the Commission chose to designate Amendment 709 for prospective application only. It did so by not listing Amendment 709 under U.S.S.G. § 1B1.10 as an amendment designated for retroactive application, as discussed above. Although the Commission offered no written explanation for its choice, defense counsel represents that he was present at the Sentencing Commission's "Retroactivity Summit" held in St. Louis, Missouri in January 2008,[8] and heard Sentencing Commission Vice–Chairman Rubin Castillo explain that the Commission declined to designate Amendment 709 for retroactive application because of its purported complexity and, more to the point, because the Commission had decided in the same timeframe to designate the Crack Cocaine Amendment for retroactive application. In other words, the Commission apparently believed that the administrative burden of rectifying unjust career-offender sentences would be too great given the concurrent burden of rectifying unjust crack cocaine sentences.

It is readily apparent to the Court that the Commission's determination that Amendment 709 should never be applied retroactively was unsound. All three factors set forth in the Background Note to § 1B1.10, concerning when retroactivity is appropriate, weigh strongly in favor of resentencing in Horn's case. In addition, the determination not to make Amendment 709 retroactive was evidently not the product of reasoned deliberation or

empirical research. All the public commentary was in favor of retroactive application except for one comment from the Department of Justice. Even the DOJ's objection was perfunctory, and its letter of objection was concerned primarily with Amendment 706, the Crack Cocaine Amendment, rather than the criminal-history amendment. The Commission provided no written explanation for its decision; even if it had, there is surely no reasoning it could have offered that would not have applied equally to Amendment 706 which was selected for retroactive application. The oral explanations offered by Rubin Castillo likewise do not provide a sound basis for the decision, nor were they based on any empirical research. First, the complexity of the resentencings under the Crack Cocaine Amendment far exceeds the complexity of resentencing defendants who were improperly designated as "career offenders" under the prior interpretation of the term "related cases." Moreover, in this Court's experience, the number of defendants sentenced under the original crack Guidelines who will be eligible to seek resentencing based on Amendment 706 far exceeds the number of career offenders who would fall within the ambit of Amendment 709. Even if that were not the case, an interest in limiting the overall work load of the federal courts and the executive branch finds no place in the three factors identified by the Sentencing Commission in § 1B1.10's Background Note for determining when resentencing is warranted. As the defendant argues, it is manifestly unjust to deny an offender a nearly ten-year reduction to his unjustly long sentence simply because courts have been called upon, at the same time, to rectify unjustly long crack cocaine sentences.

8. Counsel actually represents that this Summit took place in 2005. (Doc. No. 51, at 5.) The Court presumes that to be a typographical error and takes judicial notice of the fact that the Summit in St. Louis took place in January 2008.

This Court therefore rejects the Commission's purported policy determination that Amendment 709 should not be applied retroactively as unsound and not based upon reasoned deliberation or empirical research.

**D. The Background Note to § 1B1.10 provides sound guidance as to when resentencing is warranted pursuant to a post-sentencing reduction in the sentencing range, and militates in favor of applying Amendment 709 retroactively in Horn's case.**

The background note to U.S.S.G. 1B1.10, however, provides generally sound guidance as to when it is appropriate to resentence an offender due to a post-sentencing reduction in his sentencing range, and a decision to resentence Horn pursuant to 18 U.S.C. § 3582(c)(2) would be consistent with the policy espoused therein. The Note states that the decision of whether to apply an amendment retroactively should be guided by three factors: "the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range." U.S.S.G. § 1B1.10 cmt. background. As previously indicated, these factors all weigh heavily in favor of resentencing in this case.

First, one of the primary purposes of Amendment 709 was to correct and simplify a guideline that had been interpreted inconsistently, thereby leading to unfair and overly long sentences. U.S.S.G. app. C, supp., Amendment 709, "Reason for Amendment"; *United States v. Martin*, 438 F.3d 621, 640 (6th Cir.2006) (Martin, J., concurring) (noting that the courts' stringent application of the related-cases doctrine (pre-Amendment 709) had "led to, in no small part, the problem of overpunishment in our system of criminal justice").

Amendment 709 partially remedies that problem, and in order to be effective and fair, it should apply not just to offenders facing sentencing in the future, but also to those individuals who, like Horn, are already serving sentences that are too long based on an erroneous interpretation of the Guidelines made at a time when the Guidelines were mandatory rather than advisory.

Second, Amendment 709, if applied to Horn's case, would reduce his sentencing range by approximately half, from 188 to 235 months down to 92 to 115 months. Horn was originally sentenced to 204 months, in the middle of the original sentencing range. If he were resentenced in the middle of the reduced sentencing range, his sentence would be in the range of eight and a half years rather than the seventeen he is currently serving. The magnitude of the change in Horn's sentencing range that would result from application of Amendment 709 is enormous and militates strongly in favor of retroactivity.

Third, there is little or no "difficulty [in] applying the amendment retroactively to determine the amended guideline range." U.S.S.G. § 1B1.10 Commentary (Background). Horn's eligibility for reclassification under Amendment 709 is undisputed: Horn would not be classified as a career offender under the revisions to § 4A1.2(a). The Probation Office has already submitted a Supplement to the original Presentence Investigation Report setting out the Guidelines sentencing range that would apply if Horn were not considered a career offender.

It is clear to the Court that resentencing of Horn under 18 U.S.C. § 3582(c)(2), pursuant to Amendment 709, is appropriate and consistent with the sound policy statements of the Sentencing Commission set forth in the Background Note to U.S.S.G. § 1B1.10. It bears emphasizing, however,

that the Court's holding here does not serve to make every Amendment not included in § 1B1.10(c) retroactive since the Guidelines are still instructive even if not mandatory and, in most instances, the Commission has sound policy reasons for not making amendments retroactive.

### E. The Government's arguments against retroactive application of Amendment 709 are unavailing.

The Government argues that this Court lacks jurisdiction to revisit Horn's sentence. More specifically, the Government contends that Horn does not qualify for a modification to his sentence under the "limited and narrow exception" to the rule that final judgments cannot be modified set forth in 18 U.S.C. § 3582(c)(2), because Amendment 709 is not listed in U.S.S.G. § 1B1.10(c) as subject to retroactive application. The circuit court cases cited in support of this proposition, including *United States v. Dullen*, 15 F.3d 68, 70–71 (6th Cir.1994), and *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir.2003), both predate *Booker*, which was issued in 2005.

In *Dullen*, the Sixth Circuit affirmed the district court's denial of the defendant's motion for a reduction in sentence. Citing 18 U.S.C. § 3582(c)(2), the court observed that when the Sentencing Commission lowers a particular sentencing range by amending the Sentencing Guidelines after a convict's sentencing date, the sentencing court may subsequently modify the penalty imposed earlier under the stricter regime if such reduction is consistent with applicable policy statements issued by the Commission. *Dullen*, 15 F.3d at 70–71. Based on the policy statement set forth in U.S.S.G. § 1B1.10 which provided that only those amendments listed therein were subject to retroactive application, the court found that the defendant was not entitled to a reduction in sentence because the amendment that would have reduced his sentence was not listed in § 1B1.10. In

support of its decision, however, the court relied on then-current law, pursuant to which "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements [issued by the Sentencing Commission]." *Id.* at 69 (quoting *Stinson v. United States*, 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)). The Eleventh Circuit reached basically the same conclusion in *Armstrong*, 347 F.3d at 909. Pursuant to *Booker*, the Guidelines themselves are no longer considered binding; it stands to reason that the policy statements set forth in the Guidelines are not binding either. *Dullen* and *Armstrong*, in holding otherwise, are no longer good law. Moreover, pursuant to *Booker*, statutes making provisions of the Guidelines mandatory are likewise invalid.

The other cases cited by the Government, although issued post-*Booker*, are either inapposite or else they do not take into consideration the fact that the holdings in *Dullen* and *Armstrong* must be reconsidered in light of *Booker* and its progeny. Consequently, this Court finds them unpersuasive. For instance, in *United States v. Rolle*, 163 Fed.Appx. 245 (4th Cir.2006), the Fourth Circuit issued a one-paragraph opinion affirming the district court's denial of the defendant's motion to modify sentence under 18 U.S.C. § 3582(c)(2) and *Booker*. The opinion does not indicate which amendment to the Sentencing Guidelines would have reduced the defendant's sentence if he had been sentenced after it went into effect. The case simply cites an Eleventh Circuit case in support of its holding that "*Booker* is inapplicable to § 3582(c)(2) motions." *Id.* at 246 (quoting *United States v. Moreno*, 421 F.3d 1217, 1220 (11th Cir.2005)).

*Moreno* involved a *pro se* defendant's appeal of the denial of a motion to reduce his sentence in which he challenged the district court's findings that (1) Amendment 591 to the Guidelines did not provide

a basis to reduce his sentence and (2) that *Booker* did not provide a jurisdictional basis for the district court to consider his post-sentencing rehabilitative efforts in a § 3582(c)(2) motion. Amendment 591, however, actually *was* an amendment listed under U.S.S.G. § 1B1.10(c) as covered by the policy statement and appropriate for retroactive application. The court first held that "because Amendment 591 only applies to the selection of the relevant offense guideline, not the selection of a base offense level within the applicable offense guideline, the district court did not abuse its discretion by denying Moreno's § 3582(c)(2) motion." 421 F.3d at 1220. The court went on to address the defendant's argument that the sentencing court had previously been constrained by 18 U.S.C. § 3553(b), which made the Guidelines mandatory, from reducing his sentence based on *post-sentencing* rehabilitative efforts. Since that provision had been invalidated by *Booker*, he argued, his case should be remanded to determine whether a reduction under § 3582(c)(2) was warranted. In dismissing that argument, the Fourth Circuit noted that

> Section 3582 only provides a district court with the discretion to reduce a sentence following the lowering of a sentencing range by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). [A] sentencing adjustment undertaken pursuant to Section 3582(c)(2) does not constitute a *de novo* resentencing. [A]ll original sentencing determinations remain unchanged with the sole exception of the guideline range that has been amended since the original sentencing.

*Id.* (citations and internal quotation marks omitted). The *Moreno* court also noted *Booker* does not apply to cases on collateral review, and that the Supreme Court had not made *Booker* "retroactively available on collateral review for purposes of authorizing a second or successive § 2255 motion." *Id.* (citations omitted).

In *United States v. Price*, 438 F.3d 1005 (10th Cir.2006), also cited by the Government, no specific Guideline amendment lowering the sentencing range was at issue. Instead, the defendant argued that *Booker*, by severing the portions of the United States Sentencing Guidelines that made them mandatory, " 'indirectly lowered' the sentencing range under which he was sentenced and thus conferred on the district court authority to reduce his sentence under § 3582." *Id.* at 1006. The Tenth Circuit affirmed the district court's denial of the defendant's motion for a reduced sentence on that basis, agreeing that " § 3582(c)(2) only authorizes a reduction when the Sentencing Commission reduces the range." *Id.* The Sixth Circuit reached basically the same conclusion in *Humphress v. United States*, 398 F.3d 855 (6th Cir.2005). There, it affirmed the denial of the defendant's § 2255 motion on the basis that *Booker, per se*, did not apply retroactively to cases already final on direct review. *Id.* at 857.

These holdings have no application to Horn's case. As Horn points out, he is not "seeking resentencing under § 3582(c)(2) on the theory that *Booker*, in and of itself, has lowered his sentencing range and thereby independently triggered § 3582(c)(2)." (Doc. No. 54, at 2.) [9] He is

---

9. The other case cited by the Government is likewise inapposite. In *United States v. Rodriguez–Pena*, 470 F.3d 431, 433 (1st Cir.2006), the First Circuit issued a very brief opinion summarily affirming the district court's denial of the defendant's motion for a reduction in sentence under § 3582(c)(2). The facts and circumstances of this case are so dissimilar from those in Horn's case that the holding has no application here. First, the court noted that the Amendment at issue would not have changed the defendant's sentence since he did not fall within its terms. Moreover, even if he had, the interpretation of the Guidelines adopted by amendment at issue was the one already prevailing in this circuit

arguing instead that *Booker* invalidated that portion of 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 that made courts' adherence to the Guideline policy statement set forth in § 1B1.10(a) mandatory. To this Court's knowledge, no other opinion has addressed precisely that issue.

Instead, basically all of the district court decisions addressing the retroactivity of Amendment 709 have presumed without analysis, based largely upon decisions issued prior to *Booker*, that the policy statement set forth in U.S.S.G. § 1B1.10 is mandatory and that if an amendment is not listed under § 1B1.10(c), then the courts have no authority to give it retroactive application. The few circuit courts to review those decisions have done so summarily, without a considered analysis of the import of the Supreme Court's recent decisions. This Court therefore respectfully disagrees with those conclusions.

## III. CONCLUSION

Defendant Horn's motion for resentencing is **GRANTED** on the basis that the Court rejects for policy reasons, as explained above, the Sentencing Commission's decision not to include Amendment 709 among those Guideline amendments subject to retroactive application. The matter will be set for resentencing on WEDNESDAY, JANUARY 7, 2009, at 10:00 a.m., at which time the Court will consider the factors set forth in 18 U.S.C. § 3553(a).

It is so **ORDERED**.

at the time of the defendant's sentencing. That finding disposed of the defendant's appeal but the court went on, basically in dictum, to reject the defendant's contention that a § 3582(c) reduction was warranted under *Booker* on the theory that that decision "clarified" the guidelines. Further, because the defendant had already been denied relief under § 2255, that "argument, even if successful, would improperly bypass the second-or-successive regimen prescribed by § 2255 ¶ 8." *Id.* at 433.