RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DERRY LOVINS,

          *Petitioner-Appellant,*

    *v.*

TONY PARKER, Warden,

          *Respondent-Appellee.*

No. 11-5545

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:08-cv-2706—Jon Phipps McCalla, Chief District Judge.

Argued: November 27, 2012

Decided and Filed: March 28, 2013

Before: CLAY and STRANCH, Circuit Judges; BELL, District Judge[*]

_____

**COUNSEL**

**ARGUED:** Ryan T. Holt, SHERRARD & ROE, PLC, Nashville, Tennessee, for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Ryan T. Holt, SHERRARD & ROE, PLC, Nashville, Tennessee, for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

    JANE B. STRANCH, Circuit Judge. After a Tennessee state court jury convicted petitioner Derry Lovins of second-degree murder, the state trial court judge made additional factual findings and enhanced Lovins's sentence from twenty to twenty-three

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

years based on those findings.  In this petition for a writ of habeas corpus under 28 U.S.C. § 2254, Lovins raises various claims of trial error and argues that the three-year sentence enhancement was unconstitutional under the rule of *Blakely v. Washington*, 542 U.S. 296 (2004), because the sentence was enhanced based on facts that were not found by a jury.  The history of Lovins's requests for relief in state court is byzantine, but the legal principles are not.  Lovins's direct appeal was not final until almost three years after the *Blakely* decision, and therefore *Blakely* applies to his case under the clearly-established retroactivity rules of *Griffith v. Kentucky*, 479 U.S. 314 (1987), and *Teague v. Lane*, 489 U.S. 288 (1989).  For this reason, and because the procedural default doctrine does not bar our review of the merits of Lovins's *Blakely* claim, we **REVERSE** the district court's denial of relief, and we conditionally **GRANT** a writ of habeas corpus on the *Blakely* sentencing claim only.  We **AFFIRM** the district court's denial of relief on all of Lovins's other claims.

## I.  OVERVIEW

### A.  Factual background

The facts that led to Lovins's conviction are largely uncontested.  On December 4, 2001, Lovins was driving a van with four passengers, and Geoffrey Burnett was driving a car with two passengers.  In an encounter on a street in Dyersburg, Tennessee, Lovins used a .357 handgun to fire two shots at Burnett's car, killing Burnett.  Lovins later turned himself in.

At trial, Lovins was represented by retained counsel Charles Agee, and he pursued a self-defense strategy.  Lovins presented two witnesses who testified that Burnett had told them he was going to kill Lovins that day.  One of those witnesses was Burnett's girlfriend.  She testified that Burnett stated to her on the day of the murder that he was going to get a gun, and she understood him to mean he was going to get the gun "to take care of a problem" he was having with Lovins.  *State v. Lovins*, No. W2003-00309-CCA-R3-CD, 2004 WL 224482, at *4–5 (Tenn. Crim. App. Feb. 4, 2004) ("*Lovins I*").

Lovins called two additional witnesses who testified that Burnett was a dangerous individual who had been involved in shootings previously. Lovins attempted to procure testimony from one of these witnesses, Kim Floyd, to show Burnett had been involved in a shooting that resulted in the death of Floyd's two-year-old child. Though the trial court limited Floyd's direct testimony, the testimony presented contained sufficient information for the jury to infer what had happened. Floyd testified that her child had been killed "at the hands of a couple people that's involved with this case." Later, the court allowed Lovins to testify that Floyd told him Burnett "was thought to have been involved in a homicide involving her family."

The State presented testimony from a passenger in Burnett's vehicle; testimony from various police witnesses; forensic and autopsy results; and physical evidence recovered from the vehicles. A police investigator testified that he recovered three .357 bullets and a single brown work glove from Lovins's vehicle. An envelope containing the evidence was admitted without objection, but Lovins now alleges that the State did not properly disclose this evidence during pretrial discovery.

On August 22, 2002, the jury found Lovins guilty of second-degree murder.

**B. Sentencing**

In determining Lovins's sentence, the trial court applied a procedure that the Tennessee Supreme Court later acknowledged to be unconstitutional under *Blakely*. The judge followed the Tennessee sentencing rules then set forth in Tennessee's Criminal Sentencing Reform Act of 1989. *See* Tenn. Code. Ann. § 40-35-210 (2000).[1] Section 40-35-210 instructed the court first to determine the appropriate range of the sentence, stating that "[t]he presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors." § 40-35-210(c). If a judge found enhancement factors, the sentence could be increased. § 40-35-210(d).

---

[1]Section 40-35-210 was amended in 2005. *See* Act of June 7, 2005, ch. 353, 2005 Tenn. Pub. Acts 788. References that follow are to the version of the statute prior to this amendment.

At this point, a short primer on *Blakely* is necessary to understand the parties' arguments.  The relevant United States Supreme Court precedent begins with *Apprendi v. New Jersey,* which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  Four years later, in *Blakely*, the Court clarified that the definition of "'statutory maximum' for *Apprendi* purposes is not the high-end that a sentence may not exceed, but rather the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303.  A year later, the Court clarified that the *Apprendi*/*Blakely* rule applies to the federal sentencing guidelines.  *United States v. Booker*, 543 U.S. 220, 226–27 (2005).

In its first encounter with *Blakely*, the Tennessee Supreme Court determined that the rule did not necessarily invalidate § 40-35-210.  *State v. Gomez*, 163 S.W.3d 632, 661 (Tenn. 2005) ("*Gomez I*").  The defendants in *Gomez I*, however, filed a petition for certiorari to the United States Supreme Court.  On January 27, 2007, the Court invalidated California's sentencing procedure, which was virtually identical to Tennessee's.  *Cunningham v. California*, 549 U.S. 270 (2007).  On February 20, the Supreme Court vacated *Gomez I* and remanded the case to the Tennessee Supreme Court for consideration in light of *Cunningham*.  *Gomez v. Tennessee*, 549 U.S. 1190 (2007).  On remand, the Tennessee Supreme Court acknowledged that § 40-35-210 "violated the Sixth Amendment as interpreted by the Supreme Court in *Apprendi*, *Blakely*, and *Cunningham*." *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007) ("*Gomez II*").

At the time Lovins was sentenced, however, the Supreme Court had not yet decided *Blakely*.  Pursuant to § 40-35-210, the judge determined that the range for Lovins would be fifteen to twenty-five years and therefore the presumptive sentence would be twenty years.  He then, without the assistance of a jury, found the existence of four aggravating factors and the absence of any mitigating factors.  He found that Lovins (1) had a history of criminal convictions or behavior, (2) had a history of unwillingness to comply with conditions of release, (3) possessed a firearm during the commission of

his offense, and (4) showed no hesitation about committing a crime with a high risk to human life. Based on these findings, the judge increased Lovins's sentence from twenty to twenty-three years in prison. Lovins's counsel did not object to the sentencing methodology by, for example, alleging that it violated *Apprendi*.

## C. Direct and postconviction review

Though Lovins was sentenced in 2002, direct review of his conviction and sentence did not ultimately become final until 2007—nearly three years after the *Blakely* decision. The procedural history was unusual, however, because Lovins's counsel at first failed to file an application for permission to appeal on direct review to the Tennessee Supreme Court. Then, only after Lovins had filed a *pro se* motion for postconviction relief, the Tennessee Court of Criminal Appeals determined that his counsel's failure constituted ineffective assistance and re-opened Lovins's direct review to allow the filing. As a result of this intertwined direct and postconviction review, the Tennessee Supreme Court did not finally deny relief on Lovins's direct appeal until March 5, 2007.

In Lovins's initial and unsuccessful direct appeal to the Court of Criminal Appeals, he presented only one argument: that the evidence was insufficient to support a conviction for second-degree murder. The Court of Criminal Appeals denied relief on this claim on February 4, 2004. When Lovins later filed his request for postconviction relief, however, he significantly expanded his allegations of error. He framed his request for state postconviction relief as a claim of ineffective assistance of trial and appellate counsel, arguing that his counsel had (1) failed to appeal the exclusion of Kim Floyd's testimony about Burnett's role in the death of her daughter, (2) failed to appeal the "length of the sentence and the application of enhancement factors," and (3) failed to file the request for permission to appeal to the Tennessee Supreme Court, among other failures. The petition also noted that the prosecution had failed to disclose the physical evidence that was introduced at trial.

The trial court held a postconviction relief hearing and denied relief on all claims in a June 2, 2005 order that noted Lovins was alleging a "*Blakely* violation." The trial

court, however, found no constitutional violation "pursuant to the recent Tennessee Supreme Court decision in [*Gomez I*]," in which the Tennessee sentencing procedure was held not to violate *Blakely*.  Lovins appealed.

The Court of Criminal Appeals then delivered two separate rulings on postconviction relief.  First, the court held that Lovins's trial counsel, Agee, had "unilaterally terminated" Lovins's direct appeal.  As a result, the court found that Lovins was "entitled to seek a delayed Rule 11 application to appeal to the Tennessee Supreme Court" under Tennessee Supreme Court Rule 28, § 9(D)(2)(b)(i).[2]  The Court of Criminal Appeals therefore vacated its original direct appeal order from February 4, 2004, and "reinstate[d]" it as of November 3, 2006, to allow Lovins to seek review by the Tennessee Supreme Court of his direct appeal.  R. 18-1 at PageID #4.  In the meantime, the court stayed the remaining postconviction proceedings.  *Id.*; *see Gibson v. State*, 7 S.W.3d 47, 49 (Tenn. Crim. App. 1998) (noting that a petition for postconviction relief "may not be maintained while a direct appeal of the same conviction and sentence is being prosecuted").

Though Lovins had been appointed new counsel for his petition for postconviction relief, the Court of Criminal Appeals instructed Lovins's direct appeal counsel, Agee, to file this application for permission to appeal on direct review.  In the application, despite the fact that Lovins had raised several additional constitutional claims in his motion for postconviction relief, Agee again only presented one question for review: whether the evidence had been sufficient to convict.  On March 5, 2007, with a bare form order, the Tennessee Supreme Court denied the request for leave to appeal. Lovins did not file a petition for writ of certiorari to the United States Supreme Court.

---

[2]Rule 28, § 9(D) empowers trial courts and the Tennessee Court of Criminal Appeals hearing a petition for postconviction relief to enter an order "granting the petitioner a delayed appeal" from a judgment entered on direct review of the petitioner's conviction and sentence.  *See Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (noting that such a delayed appeal is available to petitioners for unilateral termination of their *direct* appeal, though not for termination of a postconviction appeal).  Once a delayed appeal is granted, and the proper Rule 11 application is filed, "the Appellate Court Clerk shall immediately reinstate the original appeal on the docket" and the appeal then proceeds as it would otherwise have on direct review under Rule 11.  Tenn. Sup. Ct. R. 28, § 9(D)(2)(b)(iii).  "Where a delayed appeal is granted and the petitioner is unsuccessful on appeal, and new issues cognizable in a post-conviction proceeding result from the handling of the delayed appeal, the petitioner may amend the original post-conviction petition to include such new issues."  *Id.* §9(D)(3)(a).

After the original appeal had been reinstated and was finally completed, the Court of Criminal Appeals resumed the postconviction process and filed a second opinion and order denying postconviction relief on all of Lovins's claims. In that September 14, 2007 order, the court did not state that any of Lovins's claims were defaulted for state-law procedural reasons. Instead, it addressed and dismissed each claim on the merits.

On the *Blakely* claim, the Court of Criminal Appeals noted that the United States Supreme Court had recently vacated the *State v. Gomez* decision (*Gomez I*) on which the trial court had predicated its conclusion that no *Blakely* violation had occurred. Nonetheless, the Court of Criminal Appeals denied relief on the claim, stating that *Blakely* was not applicable to cases on collateral review. Because this is the last reasoned state-court decision on the *Blakely* issue, we reproduce the relevant language in full below:

> In *Blakely*, the United States Supreme Court concluded that the "'statutory maximum' for *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. Subsequent to that decision, our supreme court decided *State v. Gomez*, in which a majority of the court concluded that, unlike the sentencing scheme in *Blakely*, "Tennessee's sentencing structure does not violate the Sixth Amendment." *Gomez*, 163 S.W.3d at 661. However, the United States Supreme Court recently vacated our supreme court's ruling in *Gomez* and remanded the case for reconsideration in light of its recent decision in *Cunningham v. California*, 549 U.S. ----, 127 S. Ct. 856 (2007). Thus, we no longer follow *Gomez* given the Supreme Court's instruction. *State v. James A. Mellon*, No. E2006-00791-CCA-R3-CD, 2007 WL 1319370, *9 (Tenn. Crim. App., at Knoxville, May 7, 2007) (no Tenn. R. App. 11 application filed). In the present case, Petitioner raised the issue in a collateral attack. This Court has previously held that retrospective application of the rule announced in *Blakely* is not applicable to cases on collateral review. *Roy Allen Burch v. State*, No. E2004-02365-CCA-R3-PC, 2005 WL 1584379, *2 (Tenn. Crim. App., at Knoxville, July 7, 2005) (no Tenn. R. App. P. 11 application filed) (citing *Isaac Lydell Herron v. State*, No. W2004-02533-CCA-R28-PC (Tenn. Crim. App., at Jackson, Nov. 22, 2004)). Petitioner is not entitled to relief on this issue.

*Lovins v. State*, No. W2005-01446-CCA-R3-PC, 2007 WL 2700097, at *12 (Tenn. Crim. App. Sept. 14, 2007) ("*Lovins II*"). Lovins filed an application for permission to appeal that postconviction ruling to the Tennessee Supreme Court, but the application was denied. He then filed a motion to recall the mandate of the Tennessee Supreme Court and requested leave to file a petition for extraordinary review of the *Blakely* claim, but that motion was denied as well.

This habeas case requires a review of the retroactivity reasoning of the Court of Criminal Appeals—the last state court to enter a reasoned decision on Lovins's *Blakely* claim. And the focus of this inquiry will necessarily be on the timing of each of the preceding state-court decisions. We recognize that it can be difficult to distill the temporal relationship from the above narrative and thus (at the risk of repetition) include below a time-line of the state-court decisions in Lovins's case:

> ■ September 17, 2002: Sentencing. State trial court finds additional facts and enhances Lovins's sentence from 20 to 23 years.
>
> ■ February 4, 2004: Direct appeal. Conviction and sentence affirmed on direct appeal by the Tennessee Court of Criminal Appeals.
>
> ■ June 24, 2004: U.S. Supreme Court decides *Blakely v. Washington*.
>
> ■ June 2, 2005: Postconviction review. State trial court recognizes that Lovins has alleged a *Blakely* violation, but denies relief.
>
> ■ November 3, 2006: Postconviction review. Court of Criminal Appeals finds ineffective assistance of counsel and "reinstate[s]" its February 4, 2004 judgment, in order to allow the direct appeal to be re-opened.
>
> ■ March 5, 2007: Direct appeal. Tennessee Supreme Court denies Lovins's application for permission to appeal on his re-opened direct review.
>
> ■ September 14, 2007: Postconviction review. Court of Criminal Appeals acknowledges the Tennessee sentencing procedures likely violated *Blakely*, but still denies relief on Lovins's postconviction *Blakely* claim based on a retroactivity analysis. This is the last reasoned state court decision.

The key relationship, as discussed below, is between Lovins's direct appeal and *Blakely*—which was decided nearly three years before Lovins's re-opened direct appeal

ultimately became final. In the end, despite this unusual procedural history, both the Court of Criminal Appeals and the Tennessee Supreme Court denied postconviction relief.

**D. Federal habeas**

Having exhausted his state court postconviction appeals, Lovins filed a federal petition for habeas corpus. In that petition, Lovins again alleged, among other claims, (1) his *Blakely* claim, (2) the claim based on exclusion of Floyd's testimony, and (3) his claim based on the State's failure to disclose the physical evidence prior to trial. He also alleged a claim of ineffective assistance of trial and appellate counsel as "cause" to excuse any procedural default of his *Apprendi*/*Blakely* claim. The district court granted summary judgment to the State on all claims. We granted a certificate of appealability.

Now, on appeal, Lovins maintains his allegations of state-court trial error, but he devotes his briefing and oral argument almost entirely to the *Blakely* sentencing claim. He argues that the Tennessee state courts and the federal district court have improperly analyzed the question of whether *Blakely* applies retroactively to his case. In response, the State does not challenge Lovins's argument that the sentencing procedure employed in his case now violates the Sixth Amendment, nor does it challenge the argument that Lovins's direct appeal became final three years after *Blakely* was published. Instead, the State argues that the Court of Criminal Appeals and the district court were correct that *Blakely* does not apply retroactively to cases on collateral review. In any event, the State argues, no sentencing issue was ever raised on direct appeal for the Tennessee courts to consider. Though the State did not use the term "procedural default" in its briefing, the State clarified at oral argument that it believes Lovins procedurally defaulted his *Blakely* claim by failing to raise it at the appropriate time on direct review.

## II. STANDARD OF REVIEW

Where a district court denies a federal habeas corpus petition, we review the district court's legal conclusions *de novo* and its factual findings under a "clearly erroneous" standard. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010).

We review the merits of Lovins's claims—including his *Blakely* claim—pursuant to the deferential standard of review Congress mandated in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), which provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). A decision is "contrary to" clearly established federal law under § 2254(d)(1) if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity." *Harrington v. Richter*, 131 S. Ct. 770, 786, (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

## III.  ANALYSIS

**A. *Blakely* claim**

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).  In addition to the deferential AEDPA standard of review, these rules include the judicial doctrines of procedural default and *Teague* non-retroactivity. Though the State's arguments focus almost exclusively on the merits of the last reasoned state-court decision that denied relief to Lovins, we first address the procedural-default and *Teague* defenses.

### 1.  Procedural default

Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition.  *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997) (noting that procedural default should "ordinarily" be considered before retroactivity).  The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition.  *See* 28 U.S.C. § 2254(b), (c).  Both rules have the purpose of allowing state courts the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas proceedings.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

We pause before engaging in a procedural default analysis because the State did not squarely present procedural default as a defense to the *Blakely* claim in its briefing before this court.  The State did not discuss exhaustion at all and discussed procedural default only with regard to Lovins's claims of trial error and his claim of ineffective assistance of counsel.  The most robust treatment of the issue with regard to Lovins's *Blakely* claim consisted of the following paragraph:

> The respondent concedes that *Blakely* was decided before the Tennessee Supreme Court denied permission to appeal in the petitioner's case. However, the petitioner raised no sentencing issue in his direct appeal to the Tennessee Court of Criminal Appeals and raised no sentencing issue in his application to appeal to the Tennessee Supreme Court. The petitioner seems to argue that the Tennessee Supreme Court was obligated to raise the issue *sua sponte*.

Resp. Br. 13. The brief does not use the term "procedural default," otherwise develop this argument, or provide any case law in support.

Under similar circumstances, this court has declined to address the procedural default defense. *See Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) ("The warden's vague assertion of the procedural default defense is not sufficient to bar federal review."); *see also White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005) (noting that the procedural default defense is not jurisdictional and therefore "we are not obligated to raise the issue *sua sponte*"). Nonetheless, even if the State does waive a procedural default defense, we may raise it *sua sponte*. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). We do so here to clarify the relationship between procedural default, retroactivity, and AEDPA.

Under the procedural default rule, a federal court acting on a state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is "independent of the federal question and is adequate to support the judgment." *Coleman*, 501 U.S. at 729–30. The rule "has its historical and theoretical basis in the 'adequate and independent state ground' doctrine" that governs direct review of state court cases by the United States Supreme Court. *Harris v. Reed*, 489 U.S. 255, 260 (1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 78–79, 81–82, 87 (1977)). "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Coleman*, 501 U.S. at 732.

"A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted

where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

At oral argument, the State repeatedly argued that Lovins procedurally defaulted on his *Blakely* claim because he never raised it in state court—implicating the second type of procedural default. But Lovins *did* raise his claim in state court: he raised it in his state-court request for postconviction relief. Claims not exhausted on direct appeal may be exhausted through a properly raised and appealed application for state postconviction relief. *See Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009); *Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005). Lovins exhausted his *Blakely* claim by raising it in his request for postconviction relief and appealing the initial denial of relief by the trial court to the Court of Criminal Appeals, thereby "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009) (noting that Tennessee Supreme Court Rule 39 "clarified that litigants need not appeal criminal convictions or post-conviction relief actions to the Tennessee Supreme Court to exhaust their appeals").

Because Lovins exhausted his *Blakely* claim, the procedural default defense will only bar our review of the merits of Lovins's claim if the last reasoned state-court judgment denying relief on the claim—here, the final postconviction judgment of the Court Criminal Appeals—rests on a procedural state-law ground that is "independent of the federal question and is adequate to support the judgment." *Coleman*, 501 U.S. at 729–30.

Under the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when:

(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). The second prong of this test requires that the state courts "actually enforce[]" the state procedural rule in denying relief. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986)). In other words, "it is not sufficient that the state court *could* have applied a procedural default under state law; it must actually have done so." *Skipper v. French*, 130 F.3d 603, 609 (4th Cir. 1997) (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

In determining whether a state court actually enforced a procedural rule, we apply the "plain statement" rule of *Michigan v. Long*, 463 U.S. 1032 (1983). *See Harris*, 489 U.S. at 263. Because a plain statement is required, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Id*.

While the State now requests that we apply the procedural default doctrine to Lovins's *Blakely* claim, it does not and cannot argue that the last Court of Criminal Appeals decision "clearly and expressly" denied postconviction relief to Lovins based on a state procedural bar. The final Court of Criminal Appeals decision contains no express discussion of waiver, procedural default, or of any specific Tennessee procedural rule.

The decision's treatment of the *Blakely* claim consisted entirely of two statements. First, the decision acknowledged that the United States Supreme Court had rejected the argument that Tennessee's sentencing procedures did not violate *Blakely*. Second, the decision stated:

In the present case, Petitioner raised the issue in a collateral attack. This Court has previously held that retrospective application of the rule

> announced in *Blakely* is not applicable to cases on collateral review. *Roy Allen Burch v. State*, No. E2004-02365-CCA-R3-PC, 2005 WL 1584379, *2 (Tenn. Crim. App. July 7, 2005) (no Tenn. R. APP. P. 11 application filed) (citing *Isaac Lydell Herron v. State*, No. W2004-02533-CCA-R28-PC (Tenn. Crim. App. Nov. 22, 2004)). Petitioner is not entitled to relief on this issue.

*Lovins II*, 2007 WL 2700097, at *12. In neither of the two Tennessee state court cases cited here, *Burch* and *Herron*, was the question of procedural default relevant. In fact, those cases applied federal, rather than state, retroactivity rules. *See Herron v. State*, No. W2004-02533-CCA-R28-PC, 2004 Tenn. Crim. App. LEXIS 1181 (Tenn. Crim. App. Nov. 22, 2004). The reference to the retroactivity doctrine, and the citation to these cases, therefore, cannot be read as "clearly and unambiguously" invoking a state procedural bar.

In sum, Lovins exhausted his *Blakely* claim by raising it in his petition for postconviction relief and related appeals, and the last reasoned judgment in state court ignored the question of procedural default. Accordingly, because the Tennessee state courts did not "actually enforce" a state procedural rule in denying Lovins relief, the procedural default doctrine does not bar federal habeas review of the merits of Lovins's *Blakely* claim.

### 2. Retroactivity and the merits

Having concluded that the Tennessee state courts did not deny relief to Lovins based on the invocation of a state procedural rule, we now must consider what the state courts did instead—and whether and how to apply AEDPA's standard of review.

The parties agree that the last reasoned state-court opinion on Lovins's *Blakely* claim was the Court of Criminal Appeals decision denying postconviction relief, dated September 14, 2007. That decision denied relief on the *Blakely* claim because the court determined that *Blakely* was not retroactively applicable to Lovins's case. The question of whether a specific rule of law applies retroactively to a case is a natural part of a decision "on the merits" of a claim. *See Greene*, 132 S. Ct. at 44 (describing the retroactivity rules that apply to the merits of habeas claims). When deciding the merits

of a claim, courts generally consider (1) what law applies to the dispute, and (2) how the relevant law applies to the specific facts of the dispute. Whether a Supreme Court decision applies retroactively to a dispute fits comfortably within the first half of this inquiry.

In the federal habeas context, however, the statutory AEDPA standard for reviewing a decision on the merits adds a layer of complexity to this analysis. The Supreme Court has recently clarified that federal habeas courts should treat the judicially-created *Teague* bar to retroactivity and the decision of whether a rule was "clearly established" for the purposes of AEDPA review on the merits as "distinct" inquiries. *Greene*, 132 S. Ct. at 44 (quoting *Horn v. Banks*, 536 U.S. 266, 272 (2002)). "[N]either abrogates or qualifies the other." *Id.*

To begin, therefore, we review the judicially-created law of retroactivity as it applies to federal constitutional rules of criminal procedure in federal and state proceedings—and consider whether this common law of retroactivity bars the application of *Blakely* in Lovins's case. We then turn to statutory AEDPA requirements, under which we review "the last state-court adjudication on the merits" in Lovins's case and determine what Supreme Court rulings were applicable at *that* time, and whether the state court applied the law in a contrary or unreasonable manner. *Greene*, 132 S. Ct. at 44–45.

### a. Retroactivity in federal habeas proceedings

In federal habeas proceedings, the retroactivity of a new rule of criminal procedure is governed by the twin Supreme Court cases of *Griffith v. Kentucky*, 479 U.S. 314 (1987), and *Teague v. Lane*, 489 U.S. 288 (1989).[3] In 1987, the Court settled a long debate about retroactivity by holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith*, 479 U.S. at 326. Two years later, in *Teague*, the Court

---

[3]"Although *Teague* was a plurality opinion that drew support from only four Members of the Court, the *Teague* rule was affirmed and applied by a majority of the Court shortly thereafter." *Danforth v. Minnesota*, 552 U.S. 264, 266 n.1 (2008).

laid down the modern rule of retroactivity for federal habeas proceedings: "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310 (plurality opinion). The *Teague* rule thus "*prevents* a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Danforth v. Minnesota*, 552 U.S. 264, 281 (2008) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994)).

A federal court applies the *Teague* non-retroactivity rule by proceeding in three steps:

> First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must survey the legal landscape as it then existed, and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

*Caspari*, 510 U.S. at 390 (citations and alterations omitted). In Lovins's case, we do not need to proceed to the third step of the *Teague* analysis because it is apparent from the parties' arguments about the first two steps that *Teague* does not bar consideration of Lovins's *Blakely* claim in this federal habeas proceeding.

In the first step, we consider when Lovins's conviction and sentence became final. A defendant's conviction is "final" for the purposes of *Griffith* and *Teague* when the time elapses for filing a petition for writ of certiorari to the United States Supreme Court from the state's highest court's denial of the defendant's application for review on direct appeal. *See Danforth*, 552 U.S. at 267 (citing *Caspari*, 510 U.S. at 390). Lovins argues, and the State does not contest, that Lovins's case became final on June 3, 2007, ninety days after the Tennessee Supreme Court denied his application for permission to appeal on direct review. *See* Lovins Br. 20–23; State Br. 13.

The second prong of the test is dispositive in Lovins's case.  If Lovins's direct appeal became final nearly three years *after* the Supreme Court decided *Blakely*, then it also became final four months after the Court decided *Cunningham* and three months after the Court vacated the Tennessee Supreme Court's ruling in *Gomez I*—in which the Court plainly rejected the premise that Tennessee's sentencing scheme did not violate *Blakely*.  Because Lovins's direct appeal was still pending at this time, *Griffith* mandated that all of these decisions be applied retroactively to his sentencing.  The legal landscape at the time Lovins's direct appeal became final thus left nothing to the imagination.  A court considering Lovins's claim "at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Caspari*, 510 U.S. at 390.

In other words, "*Teague*'s rule of non-retroactivity . . . applies only 'to those cases which have become final *before* the new rules are announced.'" *United States v. Becker,* 502 F.3d 122, 129 (2d Cir. 2007) (emphasis added) (quoting *Teague*, 489 U.S. at 310).  *Teague* does not, as the State seems to suggest here, bar collateral relief for a petitioner whose direct appeal became final *after* the date on which a new rule of constitutional law was announced.  *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (considering first whether respondent's conviction had already become final on direct review when *Crawford* was announced, and only proceeding to the rest of the *Teague* analysis after determining that it had).

To understand why the State's preferred reading would be incorrect, one need not look any further than *Teague* itself, where the Supreme Court expressly adopted the view of retroactivity in collateral proceedings that Justice Harlan had advanced in a series of dissents:

> Given the "broad scope of constitutional issues cognizable on habeas . . . [it is] sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of the [habeas] cases on the basis of intervening changes in constitutional interpretation."

*Teague*, 489 U.S. at 306 (quoting *Mackey v. United States*, 401 U.S. 667, 689 (1971) (Harlan, J. dissenting)). Justice Harlan envisioned that *habeas* courts would apply "the law prevailing at the time a conviction became final," *id.*, and the Supreme Court in *Teague* expressly adopted this understanding of retroactivity, *id.* at 310. ("[W]e now adopt Justice Harlan's view of retroactivity for cases on collateral review.").

As Justice Souter helpfully noted in *Wright v. West*, a post-*Teague* but pre-AEDPA case, "[t]he crux of the analysis when *Teague* is invoked, then, is identification of the rule on which the claim for habeas relief depends." 505 U.S. 277, 311 (1992) (Souter, J., concurring in the judgment). "To survive *Teague*, it must be 'old' enough to have predated the finality of the prisoner's conviction . . . ." *Id.* The consideration of whether the rule at issue is "old" enough such that its application is not *Teague*-barred begins with a bare review of the calendar and comparison of dates. In Lovins's case, we are not barred from considering *Blakely* in this collateral proceeding because *Blakely* was announced before Lovins's conviction became final.

### b. Retroactivity in state proceedings

Whether and how the federal rules of retroactivity should be applied in state proceedings are separate questions. The Supreme Court has clarified that *Teague* was a rule that was "tailored to the unique context of federal habeas and therefore had no bearing on whether States could provide broader relief in their own postconviction proceedings than required by that opinion." *Danforth*, 552 U.S. at 277. The language of *Griffith,* meanwhile, leaves no question as to its applicability in state courts: new federal rules of criminal procedure must be applied retroactively "to all cases, *state* or federal, pending on direct review or not yet final." *Griffith*, 479 U.S. at 326 (emphasis added). The "[f]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Id.* at 322.

In *Danforth,* the Court acknowledged that it is appropriate for states to develop their own "*state* law to govern retroactivity in state postconviction proceedings." 552 U.S. at 289. But the opinion also reiterated the principle that a state's authority to make and enforce its own laws exists "as long as they do not infringe on federal

constitutional guarantees." *Id.* at 280.  Because the *Griffith* retroactivity rule draws its authority from the Constitution, it provides a retroactivity floor that governs the law applicable on direct review.  As a result, a state postconviction court determining what law should have been applied on direct review may afford greater retroactivity than *Griffith* requires (or that *Teague* allows), but no less.  In the criminal context, as in the civil context, federal law "sets certain minimum requirements that States must meet but may exceed in providing appropriate relief."  *Danforth*, 552 U.S. at 288 (quoting *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 178–79 (1990)).

In the wake of *Danforth* and *Greene*, we are left to consider what standard of review to give to state-court retroactivity determinations.  Prior to those two cases, we held that federal habeas courts should review state *Teague* inquiries under the deferential §2254(d) standards accorded to determinations on the merits.  *See Henley v. Bell*, 487 F.3d 379, 385 (6th Cir. 2007) (noting AEDPA deference would apply to a state court's determination of retroactivity).  Both parties in this case assume that §2254(d) should continue to apply to those determinations, and we agree—at least to the extent that the state-court determination appears to depend on an interpretation of *Griffith* or *Teague,* as opposed to an independent and more forgiving state-law retroactivity standard.

### c. The Tennessee Court of Criminal Appeals decision

We turn now to the last reasoned state-court decision in Lovins's case—the September 14, 2007 postconviction decision of the Court of Criminal Appeals.  As the basis for the conclusion that *Blakely* did not apply retroactively in Lovins's case, the decision cited a prior unpublished opinion of that court, *Burch*, 2005 WL 1584379, at *2, for the core retroactivity rule—and specifically cited to *Burch*'s reference to another unpublished case, *Herron*, 2004 Tenn. Crim. App. LEXIS 1181.  To understand the reasoning of the court's decision in Lovins's case, therefore, we look to the retroactivity reasoning in *Herron*.

In *Herron*, which pre-dated any consideration of *Blakely* by the Tennessee Supreme Court, the petitioner had filed a motion to re-open a request for state

postconviction relief after *Blakely* was published. This motion came almost twenty years after the petitioner's conviction had become final. While the *Herron* court acknowledged that Tennessee has created a separate retroactivity determination for *state* constitutional rules, *Herron*, 2004 Tenn. Crim. App. LEXIS 1181, at *13 n.6, the court identified *Griffith* and *Teague* as governing the retroactivity analysis with regard to the federal constitutional rule announced in *Blakely*, *id.* at *12–13. Because Herron's case was no longer pending on direct review at the time *Blakely* was announced, *Griffith* did not mandate the retroactive application of *Blakely*. Thus, after determining that the rule in *Blakely* did not fit into either of the two narrow *Teague* exceptions, the *Herron* court concluded that *Blakely* was not retroactively applicable to the petitioner's case on collateral review.

We find no fault with the analysis in *Herron*, but we do find fault with how the Court of Criminal Appeals applied that analysis in Lovins's case. The factual distinction between the two cases causes the *Griffith*/*Teague* analysis articulated in *Herron* to produce a different result for Lovins. When *Blakely* was decided, Lovins's case was not yet final, but Herron's conviction had been final for decades. Unlike Herron's claim, Lovins's *Blakely* claim is therefore available under *Griffith* and not barred by *Teague*. By holding otherwise, the Court of Criminal Appeals misconstrued the federal *Teague* standard and infringed the federal constitutional *Griffith* guarantee.

In denying federal habeas relief to Lovins, the district court made a similar mistake. The district court cited our decision in *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005), for the proposition that '*Blakely* is not retroactively applicable to cases on collateral review.' In *Humphress*, however, we followed the three-step *Teague* analysis elaborated above. 398 F.3d at 860. Humphress's conviction had become final in January 2000, several months prior to *Apprendi*, over four years prior to *Blakely*, and five years prior to the *Booker* decision extending *Blakely* to the federal sentencing guidelines. To determine whether the rule in *Blakely*/*Booker* was "new," the *Humphress* panel then surveyed the legal landscape as of January 2000 to see if the rule was "dictated by precedent" at that time and concluded correctly that it was not. *Id.* at

860–61. Of course, the outcome of this second prong of the *Teague* analysis is entirely different where—as in Lovins's case—a Supreme Court decision has resolved the precise legal question at issue prior to the date at which the defendant's direct review became final. In such a case, barring some relevant factual distinction, there is no question that the rule is "dictated by precedent."

In applying the deferential § 2254(d) standard of review here, we consider the rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene*, 132 S. Ct. at 44. We therefore consider Supreme Court jurisprudence as it existed on September 14, 2007, the date the Court of Criminal Appeals decided Lovins's case. As of that date, *Blakely* had been decided, *Cunningham* had been decided, and the United States Supreme Court had vacated the *Gomez I* decision in which the Tennessee Supreme Court had held that its sentencing regime satisfied *Blakely*. Thus, when the Court of Criminal Appeals rendered the last reasoned state-court decision in 2007, there is no question (and the State does not contest) that *Blakely* was clearly established federal law.

While the AEDPA standard of review is a high bar, the application of the *Griffith*/*Teague* retroactivity analysis here does not indicate that courts could reasonably come to different conclusions. Like *Blakely*, *Griffith* was clearly established federal law at the time of the decision by the Court of Criminal Appeals. *See Williams*, 529 U.S. at 412 (explaining that "'clearly established Federal law' in § 2254(d)(1) 'refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision'"). And considering whether *Griffith* required retroactive application of *Blakely* does not involve a multi-factor test; it involves only the calendar, which we use to determine whether Lovins's case became final before or after the Supreme Court's decision in *Blakely*. Neither the state courts, nor the State, nor the district court below suggest that Lovins's conviction became final—in the language of *Griffith* and *Teague*—before the *Blakely* decision. It was therefore both contrary to and an unreasonable application of *Griffith* for the Tennessee Court of Criminal Appeals to deny Lovins relief on the basis of non-retroactivity.

### d. Remedies

Retroactivity concerns aside, the State does not contest that the judicial factfinding in Lovins's sentencing was unconstitutional under *Blakely*. The Court of Criminal Appeals acknowledged as much in its decision denying postconviction relief to Lovins, and the Tennessee Supreme Court confirmed this conclusion in *Gomez II*, 239 S.W.3d at 740. The Tennessee sentencing statute wrongly allowed "a presumptive sentence"—in Lovins's case, twenty years—"to be enhanced based on judicially determined fact." *Id.* Because the statute "permitted enhancement based on judicially determined facts other than the fact of a prior conviction, it violated the Sixth Amendment as interpreted by the Supreme Court in *Apprendi*, *Blakely*, and *Cunningham*." *Id.*

Of course, the determination that the Court of Criminal Appeals unreasonably applied *Griffith* and *Teague*—and therefore that *Blakely* applies retroactively in this case—does not alone mandate relief for Lovins. As the Supreme Court recently clarified, "retroactivity jurisprudence is concerned with whether, as a categorical matter, a new rule is available on direct review as a *potential* ground for relief." *Davis v. United States*, 131 S. Ct. 2419, 2430 (2011). "Retroactive application under *Griffith* lifts what would otherwise be a categorical bar to obtaining redress for a government's violation of a newly announced constitutional rule." *Id.* (citing *Danforth*, 552 U.S. at 271). "Retroactive application does not, however, determine what 'appropriate remedy' (if any) the defendant should obtain." *Id.*

While the question of whether a constitutional violation occurred in a § 2254 case is a "pure question of federal law," the "availability or nonavailability of remedies" is a "mixed question of state and federal law." *Danforth*, 552 U.S. at 291 (quoting *Am. Trucking*, 496 U.S. at 205 (Stevens, J. dissenting)). Thus, the retroactive application of a new rule is generally "subject . . . to established principles of waiver, harmless error, and the like." *Shea v. Louisiana*, 470 U.S. 51, 58 n.4 (1985) (applying pre-*Griffith* retroactivity doctrine); *see also United States v. Booker*, 543 U.S. 220, 268 (2005) (noting *Blakely* would be applicable to all federal sentencing guidelines cases pending

on direct review, but "expect[ing] reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test").

Similarly, the determination that a new rule of constitutional law is retroactively available does not limit a state court from invoking procedural default based on state procedural rules.  It follows that the outcome in Lovins's case would be very different if the Court of Criminal Appeals had denied relief to Lovins because he had failed to raise an *Apprendi* claim on direct appeal and could not meet a state-law "cause and prejudice" procedural default standard.  As discussed above, though, our procedural default doctrine leaves the determination of state procedural issues to the state courts to decide.  And the fact that a state court "could have" applied a state procedural rule to bar review of the merits of a claim is only relevant where a petitioner never properly exhausted his claims in state court—which is not the case here.  *See supra* Part III.A.1.

Harmless error, however, here is a federal-law question.  In determining the proper remedy for a *Blakely* error, we ordinarily consider whether the error was harmless.  *See Villagarcia v. Warden, Noble Corr. Inst.*, 599 F.3d 529, 536 (6th Cir. 2010).  In *Villagarcia*, we adopted the "more 'state-friendly standard'" of *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), for determining harmless error in cases "involving collateral review of state-court decisions." *Villagarcia*, 599 F.3d at 536–37 (citing *Hereford v. Warren*, 536 F.3d 523, 532–33 (6th Cir. 2008)).  Under that standard, "an error is considered not harmless when 'the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error.'" *Id.* at 537 (quoting *Hereford*, 536 F.3d at 533).

Like procedural default, the harmless error defense can be waived.  *See United States v. Johnson,* 467 F.3d 559, 564 (6th Cir. 2006) (finding the government waived the harmless error defense because it provided only a "perfunctory discussion" in its briefing, without any relevant case law).  Here, the State did not argue harmless error before the district court and did not argue it in briefing this appeal.  While the State did contend at oral argument that the error was harmless, we "need not reward

quick-thinking counsel by entertaining grounds brought to [the court's] attention for the first time at oral argument." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714 (6th Cir. 2001).

The State's waiver is of no consequence, however, because the *Blakely* error was not harmless. The Tennessee trial judge enhanced Lovins's sentence on the basis of the judge's finding of four aggravating factors: that Lovins (1) had a history of criminal convictions or behavior, (2) had a history of unwillingness to comply with conditions of release, (3) possessed a firearm during the commission of his offense, and (4) showed no hesitation about committing a crime with a high risk to human life. Of these four, only the existence of prior criminal convictions and the possession of the firearm could possibly be considered to be facts found by a jury beyond a reasonable doubt. And, with regard to the criminal-history factor, the judge noted that it was "not a lengthy criminal history," suggesting that this factor was not important in determining the sentence.

A finding that the error was not harmless in this case is supported by *Villagarcia*, in which we recognized that the sentencing court could end up exercising *more* discretion on remand than it had the first time around. Nonetheless, we still concluded there that "we simply cannot know whether the sentencing judge would accord the relevant factors the same weight when reassessing the matter outside the dictates of the severed provisions." 599 F.3d at 539. Such a finding is also supported by *Gomez II*, in which the Tennessee Supreme Court reviewed the judicial factfinding of only two factors—a previous history of criminal convictions or behavior and a finding that Gomez had been a "leader" in the commission of the offense. 239 S.W.3d at 736. On application of the plain error standard, the Tennessee Supreme Court found that this judicial factfinding had "adversely affected" a substantial right of the accused, *id.* at 741, and that consideration of the error was "necessary to do substantial justice," *id.* at 742. In sum, even had the State not waived the argument in Lovins's case, we would conclude that the *Blakely* sentencing error was not harmless.

Having considered the procedural default doctrine, *Teague* nonretroactivity, the deferential AEDPA standard of review on the merits, and the harmless error doctrine,

we are constrained to conclude that the judicial factfinding in Lovins's sentencing was unconstitutional and that the remedy Lovins requests is due. We need not instruct the State how to provide this remedy, only that the remedy must either result in a reduction of Lovins's sentence from twenty-three to twenty years, or in resentencing under a procedure that does not violate the Sixth Amendment. We afford the State 180 days from the date of this order to initiate the necessary proceedings.

**B. Trial error claims**

In addition to his sentencing claim, Lovins also levies two claims of trial error for which he requests habeas relief. Both claims fail.

Lovins alleges the prosecution violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the existence of physical evidence—the ammunition and work glove found in his car—until the evidence was presented at trial. Prejudice, or "materiality," is "an essential element" of a *Brady* claim, *Smith v. Mitchell*, 348 F.3d 177, 212 (6th Cir. 2003), and because the physical evidence was eventually presented at Lovins's trial, we consider only the prejudice caused by the *delay* in making the items available to Lovins. The claim fails because Lovins cannot show prejudice from the delay.

Lovins suggests that, with more time, he could have disputed that the gloves and the ammunition were his. But, given that Lovins admitted the .357 firearm belonged to him and that he had used it in the shooting, it is not clear how Lovins could have successfully argued that the .357 rounds were not his, or even why that would help him. As for the glove, Lovins suggests that with more time for preparation he may have been able to determine that the glove did not fit him. But, even if the glove did not fit, it is not clear how that would have been exculpatory. Lovins was accompanied in his car by four other individuals; to the extent that the glove belonged to one of them, it would no less suggest that Lovins and his friends had anticipated a violent conflict than if the glove belonged to Lovins. And, though Lovins testified during his postconviction hearing that the glove had a big impact on the jury, neither the prosecution nor defense discussed the glove before or after it was introduced into evidence.

Under these circumstances, the fact that the State may have failed to disclose the existence of the glove and the ammunition to Lovins prior to the trial can hardly be considered to have materially prejudiced Lovins's defense. *See O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (noting evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). As no *Brady* violation is apparent even on *de novo* review, the district court was correct to deny relief on Lovins's *Brady* claim.

Lovins's second argument of trial error is that the suppression of part of Kim Floyd's testimony amounted to a violation of the right of an accused to present witnesses in his own defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Lovins acknowledges that he procedurally defaulted this claim by failing to raise it on direct appeal, but he argues that the default is excused by his showing of ineffective assistance of counsel. The Court of Criminal Appeals considered this argument and rejected it, and the district court agreed.

We agree with the Court of Criminal Appeals that defense counsel's approach to Floyd's testimony cannot be considered to be "anything other than reasonable appellate strategy." *Lovins II*, 2007 WL 2700097, at *10. As an initial matter, the trial court allowed testimony from Floyd and Lovins from which the jury could infer that Floyd blamed Burnett for the death of her child and that Lovins had been aware of this before he shot Burnett. In addition, there was already extensive evidence from other witnesses as to Burnett's violent tendencies and as to Lovins's awareness of them, so we cannot conclude that any additional testimony from Floyd would have made a difference in the outcome of the trial. Lovins cannot show actual prejudice from any failure on his counsel's part, and he thus cannot overcome his procedural default. *See Nields v. Bradshaw*, 482 F.3d 442, 450 (6th Cir. 2007) ("To excuse [a procedural] default for the purpose of habeas review, [the petitioner] must establish both 'cause' and 'prejudice.'"). The district court was therefore correct to deny relief on Lovins's claim of error as to Floyd's testimony.

## IV. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's denial of relief on all of Lovins's claims of trial error and **DENY** his request for a new trial.

We **REVERSE** the district court's denial of habeas corpus as to Lovins's *Blakely* claim, and conditionally **GRANT** a writ of habeas corpus unless the State initiates proceedings within 180 days of this order to either (1) reset Lovins's sentence to the presumptive statutory sentence of twenty years, or (2) provide Lovins a new sentencing hearing under a sentencing procedure that satisfies the Sixth Amendment right to trial by jury.